Leonard L. GRIMES, Plaintiff, Appellant,

v.

RAYMOND CONCRETE PILE COM-
PANY et al., Defendants, Appellees.

No. 5217.

United States Court of Appeals
First Circuit.

June 18, 1957.

Harry Kisloff, Boston, Mass., for appellant.

Frank L. Kozol, Boston, Mass., with whom Lee M. Friedman, Thomas D. Burns, Boston, Mass., Robert W. Weinstein, Brookline, Mass., and Friedman, Atherton, Sisson & Kozol, Boston, Mass., were on brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment entered in the United States District Court for the District of Massachusetts on defendants' motion for a directed jury verdict, made at the close of the plaintiff's case.

The complaint, as amended, is in three counts.[1] The first count, brought under the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688, alleges that plaintiff-appellant Leonard L. Grimes on July 26, 1955 was employed as a seaman and member of a crew by defendants-appellees Raymond

1. Since the second count has been waived by plaintiff, we are not concerned with it.

Concrete Pile Company and DeLong Corporation and further alleges that plaintiff received personal injuries "while * * * in the performance of his duties as a crew member of a barge used in servicing Texas Tower No. 2 and/or Texas Tower No. 2, a vessel, on the high seas." The third count is for maintenance and cure.

Defendants' answer admits that plaintiff received personal injuries while he was an employee of the defendants, but denies that plaintiff was a seaman and member of a crew and further denies "that at the time of such injury he was in the performance of his duties as a crew member of a barge used in servicing Texas Tower No. 2 and/or Texas Tower No. 2, a vessel on the high seas." The answer also alleges that plaintiff's exclusive remedy for his injuries is under the Defense Base Act, 55 Stat. 622, as amended, 42 U.S.C.A. § 1651 et seq.

The facts brought out at the trial, insofar as pertinent to the disposition of this case, are as follows: The defendants, as joint venturers, entered into a construction contract with the United States Government for the "[t]owing, erecting and completion of fabrication and fitting out" of a Texas Tower structure on Georges Bank, 110 miles east of Cape Cod. The Texas Tower, a triangular metal platform measuring 200 feet long on each side and weighing approximately 6,000 tons, was to be permanently affixed to the ocean bottom on three caissons at the selected site. The function of the defendants was to tow the Tower to sea, elevate it, secure it and complete the outfitting so that the Tower, standing with an elevation 63 feet above high water, could be operated as a radar station by the Government.

The plaintiff was hired by the defendants on or about June 21, 1955. Thereafter, he worked on the Tower in East Boston for about three weeks, where it was being raised "to put on guide wells underneath the permanent legs." On July 11, 1955 he entered into a written employment contract with the defendants to work on the construction of the Tower at Georges Bank. Subsequently, the Tower was towed and pushed by tug boats to Georges Bank. On or about July 26, 1955, six days after the Tower had arrived at the site of its permanent location, the plaintiff was injured while returning to the Tower from a nearby tug by means of a "Navy life ring," after having worked for a few hours on a barge which carried sand and gravel for the Tower.

At the close of the plaintiff's case, defendants moved for a directed verdict on several grounds. In considering this motion the trial judge expressly restricted his consideration and confined oral argument of counsel to the first part of paragraph 6 of the motion which states:

"6. That the plaintiff at the time of his injury as an employee of these defendants was covered by the Defense Bases [sic] Act, so-called, Title 42, Section 1651, United States Code * * *."

After oral argument the trial judge directed a verdict for the defendants on all counts, stating:

"I am quite clear that in this particular case the defendants had a defense bases contract with respect to Tower No. 2 with the Navy Department of the United States. The plaintiff was hired in connection with that work. At the time of his injury he was on a barge or, rather, returning from a trip on a barge which had been doing preparatory and ancillary work in connection with Texas Tower No. 2. His remedy was under the Longshoremen and Harbor Workers Act [Defense Bases Act] [sic]. His remedy is not by a suit in this court under the Jones Act, even though were he working for another employer or an employer not having a defense bases contract, I would agree that he might be regarded as a member of the crew of the barge and entitled, under those circumstances, to the usual remedies, such as the Jones Act, available to maritime employees."

■ I believe that the Defense Base Act, set forth in relevant part in the margin,[2] furnishes the compensation benefits of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U.S.C.A. § 901 et seq., to any employee who is injured while employed outside the continental United States under a public work contract or while doing work which is preparatory and ancillary thereto, provided he does not fall within the exceptions set forth in 42 U.S.C.A. § 1654.

In the instant case there is no doubt that the construction of the Tower constituted a public work contract within the provisions of the Defense Base Act, and, further, that the plaintiff at the time of his injuries was connected with work which was preparatory and ancillary thereto. Therefore, plaintiff's exclusive remedy would be under the Defense Base Act unless he was a "member of a crew of any vessel." 42 U.S.C.A. § 1654. Of course, if the plaintiff is found to fall within the 42 U.S.C.A. § 1654 exception he might recover under the Jones Act, notwithstanding that he was employed under a public work contract.

The district court, however, does not pass squarely on the issue of whether the plaintiff was a crew member; rather, it seemed to hold that the plaintiff was limited to recovery under the Defense Base Act even if he were a member of a crew.[3] To the extent that the district court did so hold, I believe it was in error.

In the absence of a finding below on the issue of whether plaintiff was a member of a crew, I would refrain from passing any judgment on that aspect of the case. I believe that the court below should be given an opportunity to consider this case anew now that the question before us has been resolved.

I am persuaded to my conclusion by the fact that the Supreme Court has made it abundantly clear "that whether or not an employee is ' "a member of a crew" turns on questions of fact' and that if a finding on this question has evidence to support it, the finding is conclusive." Senko v. LaCrosse Dredg-

2. "§ 1651. *Compensation authorized— Places of employment*

"(a) Except as herein modified, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, shall apply in respect to the injury or death of any employee engaged in any employment—

    *    *    *    *    *

"(4) under a contract entered into with the United States or any executive department, independent establishment, or agency thereof * * * where such contract is to be performed outside the continental United States * * * for the purpose of engaging in public work, * * * irrespective of the place where the injury or death occurs, and shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof.

"*Definition of public work*

"(b) As used in this section, the term 'public work' means any fixed improvement or any project involving construction, alteration, removal, or repair for public use of the United States or its Al-

lies, including but not limited to projects in connection with the war effort, * * * as well as preparatory and ancillary work in connection therewith at the site or on the project.

"*Liability as exclusive*

"(c) The liability of an employer, contractor * * * under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) * * *.

    *    *    *    *    *

"§ 1654. *Persons excluded from benefits*

"This chapter shall not apply in respect to the injury or death of * * * (3) a master or member of a crew of any vessel. * * * "

3. The reasoning of the district judge seems to have been that any exclusion of crew members from the Defense Base Act was only as derived from the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903, and he interpreted the Defense Base Act as not incorporating those exclusions. In light of 42 U.S.C.A. § 1654, this reasoning was erroneous.

ing Corp., 1957, 352 U.S. 370, 371, 77 S.Ct. 415, 416, 1 L.Ed.2d 404. Moreover, it also has been made quite clear that "the word 'crew' does not have an absolutely unvarying legal significance." South Chicago Coal & Deck Co. v. Bassett, 1940, 309 U.S. 251, 258, 60 S.Ct. 544, 548, 84 L.Ed. 732.

Here the trial judge, although not passing squarely on the question of whether the plaintiff was a crew member, certainly indicated that the record created a question of fact on this issue when he stated, as quoted above, that he thought plaintiff was a crew member. In view of this and the evidence presented below I believe that it cannot be held as a matter of law here that plaintiff was not a crew member.

I would vacate the judgment of the district court and remand the case to that court for further proceedings.

PER CURIAM.

 It seems to a majority of the court that it would be perfectly futile to remand this case for a specific finding as to whether appellant was a "member of a crew of any vessel." Appellant was a member of the Pile Drivers Union, and was hired by appellee to work as a "pile driver" on the job of constructing the Texas Tower, the written contract of employment reciting that "Workmen's Compensation Insurance as required by law is provided." Assuming that his transitory assignment to do work on the barge made appellant for a brief six-hour period an informal member of the crew of such barge, it could not possibly be said that he was injured in the course of his employment as such crew member, for his work on the barge was all through, and he was injured while being transferred from the tug back to the Texas Tower. Furthermore, appellant's presence on the barge was only sporadic or temporary, not measuring up to the requirement of "a more or less permanent connection between the ship and the worker"; this, under established law, prevents appellant from being considered a member of the crew of the barge.

Carumbo v. Cape Cod Steamship Co., 1 Cir., 1941, 123 F.2d 991, 995; Turner v. Wilson Line of Massachusetts, Inc., 1 Cir., 1957, 242 F.2d 414, 417, note 2. If conceivably the Texas Tower could have been considered a "vessel" while being towed out to its permanent installation site at Georges Bank, it certainly had ceased to be a vessel at the time of the accident. Even if the matter were doubtful, the courts should lean to an interpretation of the law which affords to appellant the protection of a workmen's compensation act. Compensation is provided, under 42 U.S.C.A. § 1651, "irrespective of the place where the injury or death occurs, and shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof."

A judgment will be entered affirming the judgment of the District Court.