James A. Roe, Jr., J.
This is a motion for summary judgment made by the plaintiff, Josephine Nickleski, against the defendant, Aeronaves de Mexico, S. A., only.
At about eight o’clock in the evening of January 19,1961, the plaintiff was driving her new automobile along Rockaway Boulevard, northbound, in the County of Queens, City of New York. She was proceeding at a slow rate of speed as it was snowing heavily at that time. Rockaway Boulevard is a public highway
*835 in the Borough of Queens, City and State of New York, and is adjacent to Idlewild Airport. As the plaintiff was driving her ear along Roekaway Boulevard in the vicinity of an extension of runway No. 7 of Idlewild Airport, a bright light appeared to her left and attracted her attention. As she turned her head to the left, she had a momentary glimpse of a giant airplane wing approximately 50 feet from her automobile, which wing appeared to be illuminated by an intense flame. The airplane appeared to her to be about one fourth of a city block in width. Simultaneously, plaintiff’s car was struck in the left rear.
The plaintiff states, under oath, in the moving affidavit, that it was only a fraction of a second between the time that she first observed the bright light and the collision with the rear of her automobile. The automobile rolled over several times and was driven sideways off the road 100 feet or more when the automobile came to a rest. The plaintiff was stunned and was surrounded by flames and frantically attempted to open the doors of the car. When she opened the door on the driver’s side, flames shot into the car and her hair and clothing were set on fire. The entire car was engulfed in flames and the plaintiff was burning in the car. It appeared that she would not be able to get out. Shortly thereafter, a man opened the door of the car and threw the plaintiff into the snow, rolling her over and over to extinguish the flames. The plaintiff has no recollection of how she was taken to a hospital. She sustained extensive burns which required skin grafting, operative proceedings of her head, neck and shoulders. One of her ears was partially burned off. About 75% of her scalp had to be reconstructed. Plaintiff is a widow, and prior to the accident was in the restaurant business from which she supported her minor children.
It is undisputed that the defendant, Aeronaves de Mexico, S. A., is the owner of the D C 2 jet aircraft which was scheduled to fly from Idlewild Airport to Mexico City on the evening of January 19,1961, known as flight No. 401. It is also undisputed that the flight crew, consisting of Captain Ricardo Gonzalez Orduna and First Officer Antonio Ruiz Bravo, whose pilot license had been issued by the Mexican government, were all killed in this accident. Also present in the aircraft cockpit was Captain William Poe, an Eastern Airlines pilot, who, pursuant to an agreement between the defendant, Aeronaves de Mexico, S. A., and Eastern Air Lines, Inc., was assigned to this aircraft in order to act as an advisory check pilot for the Mexican crew. Section 251 of the General Business Law of the State of New York makes the owner of an aircraft liable for injuries sustained within or above this State as a result of the use or operation of *836 the aircraft by any person using or operating the aircraft with the permission, expressed or implied, of such owner in any case where the person using or operating the aircraft, or his estate, would be liable for such injuries. Therefore, since Captain Poe was accompanying the Mexican crew as an advisory check pilot with the permission of the owner of the aircraft, Aeronaves de Mexico, S. A., this defendant would be liable not only for the acts or omissions of its Mexican crew but also the acts or omissions of Captain Poe, the advisory check pilot.
The defendant, Aeronaves de Mexico, S. A., in its opposing affidavit, states ‘ ‘ for some unknown reason the aircraft was not able to make a successful take-off. It was unable to stop before the blast fence at the end of the runway, crashed through it, crossed Eockaway Boulevard, and came to rest ’ ’.
It is also undisputed that Eockaway Boulevard, at the place where the aircraft collided with the automobile, is a public highway of the Borough of Queens, City and State of New York.
The testimony of Captain Poe, who was the only surviving witness who had an opportunity to observe the Mexican crew, and who was examined before trial, and whose relevant testimony is incorporated in the affidavits submitted on this motion, supports the view that the accident was caused by the negligence or inexperience of the Mexican crew due to premature rotation which means, in laymen’s language, that the Mexican crew attempted to take off before the aircraft had reached sufficient speed. This, of course, slows down the aircraft and prevents normal take-off. The court will take judicial notice that thousands of flights have taken off from this runway in a normal and regular manner.
Defendant’s affidavits in opposition are wholly devoid of facts. There seems to be little or no possibility of disputing the testimony of Captain Poe and the plaintiff, the only survivors of this accident who have personal knowledge of what transpired.
The defendant wholly failed to adduce any facts which either dispute the affidavit of the plaintiff or the testimony of Captain Poe. The answering affidavit of defendant was made by its New York City manager who had absolutely no personal knowledge of any facts which are relevant to this issue and is purely argumentative.
Oliver Wendell Holmes, in The Common Law (pp. 145-163), enunciated the test for foreseeability as the basis of all tort liability. It would seem that any reasonable person could forsee that the operation of an airplane on a public highway in the City of New York could result in damage to persons lawfully *837 using said public highway. The common law of the State of New York reached the same result. In 1822, a balloonist came down in plaintiff’s garden and was held liable for damages done by the crowd who rushed to his aid. The court at this early date imposed strict liability upon the aeronaut, holding him liable not only for the damage he personally had caused, but also for damages caused by the crowd attracted onto the land by curiosity and his cries (Guille v. Swan, 19 Johns. 381 [N. Y. 1822]). It is easy to see the same rationale underlying this case and the famous Squib case. (Scott v. Shepherd, 2 Bl. W. 892 [1773].)
New York has enacted legislation fixing minimum safe altitudes and making a violation of said safe altitudes over congested areas a misdemeanor (General Business Law, § 245, subd. 5; § 246).
Practically all jurisdictions imposed a strict liability on aircraft owners for ground damage or for low flying. In Dahlstrom v. United States (228 F. 2d 819) the aircraft was held liable for low flying which frightened horses and caused them to trample on plaintiff who was trying to halt them. In United States v. Pendergrast (241 F. 2d 687), the owner of an aircraft was liable when the said airplane crashed into residents, killing two persons. In the neighboring State of New Jersey and in 20 other States in the United States, together with several foreign countries, there is imposed absolute liability upon airplane operators and owners for damage or injury to persons on the ground. While it might be desirable for our State to adopt such a rule, it is not necessary for the disposition of this case, since the liability of the owner of the aircraft can be predicated upon the traditional standards of care set forth in the common law of the State of New York and in all of the recent airplane cases tried in the Federal courts.
It is sound public policy, and in keeping with the dictates of reason, that an airplane has no right on a public highway, and that liability should be imposed upon the owner of an aircraft which does damage on a public highway, just as liability is imposed upon the owner of an automobile which mounts the sidewalk or a railroad train which jumps the tracks.
Plaintiff’s motion for summary judgment against the defendant, Aeronaves de Mexico, S. A., is granted and said defendant’s answer is stricken. The matter is referred to an Official Referee of this court for an assessment as to the amount and extent of damages.