Guy L. NEILL, Jr., Plaintiff-Appellee,

v.

DIAMOND M. DRILLING CO. et al., Defendants-Appellants.

No. 28013.

United States Court of Appeals, Fifth Circuit.

March 31, 1970.

On Rehearing June 8, 1970.

James C. Watson, Keys, Russell, Watson & Seaman, Corpus Christi, Tex., for defendants-appellants.

D. Yancey White, Guy Allison, Allison, Baker & White, Corpus Christi, Tex., for plaintiff-appellee.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

PER CURIAM:

This is an action for personal injuries under the general maritime law and the Jones Act, 46 U.S.C. § 688.

Plaintiff was a motorman on a drilling crew on Rig No. 21, owned and operated by defendant-appellant. At the time of plaintiff's injury, Rig No. 21 was a submersible drilling barge bottomed in Corpus Christi Bay on navigable waters and engaged in drilling operations. The district court found that Rig No. 21 was a "vessel" within the meaning of the general maritime law and the Jones Act. That finding cannot be set aside as clearly erroneous or as contrary to law. Gianfala v. Texas Company, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, rev'g 222 F.2d 382 (5 Cir. 1955); Offshore Company v. Robison, 5 Cir. 1959, 266 F.2d 769; Producers Drilling Co. v. Gray, 5 Cir. 1966, 361 F.2d 432; Chenevert v. Clinch Drilling Co., E.D.La.1967, 273 F.Supp. 943. We do not agree with the appellant that the recent cases of Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, and Nacirema Operating Co. v. Johnson, 1969, 396 U.S. 212, 90 S.Ct. 347, 24 L. Ed.2d 371, impair the present validity of those decisions.

Plaintiff's duties included general maintenance and care of the engines and generators during drilling operations, chipping and painting the vessel, and aiding in moving the vessel from its port near Corpus Christi to the drilling site. He did not live on the vessel but all of his work was performed aboard it in accomplishment of the vessel's primary function as a drilling rig. The district court found that he was a "seaman" aboard the vessel and might properly pursue this action under the general maritime law and the Jones Act. That finding is clearly correct under the test articulated in Offshore Company v. Robison, *supra*, 266 F.2d at 779.

On adequate evidence the district court found the manner of plaintiff's injury as follows:

"On September 1, 1968, plaintiff was injured while working aboard Rig No. 21. At the time of the injury he had completed his normal duties as motorman and had been assigned to help stack a coil of 9/16 inch cable known as a sand-line. This line had previously developed a kink on the drum and was being let out in order to straighten it. Immediately prior to the accident a signal was blown to summon the men coiling the sand-line to the floor of the rig to aid in adding another section of drill pipe to the drill stem. As the men started walking toward the floor the driller, L. M. Shaw, disengaged the sand-line drum, engaged the master clutch in order to kick in the draw works, and applied power to the drum. As power was applied, the sand-line drum suddenly engaged and began to rapidly take in the cable that had been coiled by plaintiff and others. Plaintiff was caught by the cable and lifted upward and into the framework of the rig some thirty or forty feet before dropping onto the rig floor. As a result plaintiff was injured and sustained certain damages.

"On the work shift prior to the accident the driller had tightened the sand-line clutch because it had been slipping. Although he reported this in the operations report, he did not inform Shaw of this and Shaw did not check the operations report before going to work. At the time of the accident the control lever to the sand-line drum was in the 'disengaged' or neutral position. However, when Shaw engaged the master clutch and applied power to the drilling cable drum the sand-line drum also engaged. This was due to the sand-line clutch being so tight as to prevent it from disengaging when the control lever was placed in the neutral position. In spite of this if Shaw had slowly engaged the master clutch in the proper manner before applying power he would have seen that the sand-line drum was still engaged. The evidence indicates that it was not uncommon for the sand-line clutch to remain engaged if the gaskets of the air-release valve became damp and dirty or if the clutch was too tight."

■ The district court found that the driller on the prior shift was negligent in failing to inform Shaw that he had tightened the clutch on the sand-line drum, and that Shaw was negligent in failing to discover that fact by inspecting the operations report, and was further negligent in failing to gradually engage the master clutch in order to determine if the sand-line drum was properly disengaged, and that each of these acts of negligence was a proximate cause of plaintiff's injuries and damages. Those findings are amply supported by the evidence and are not clearly erroneous. That being true, the court's further holding that the condition of the clutch mechanism rendered the vessel unseaworthy was not essential to the validity of the decision, and we need not determine whether the vessel was "in navigation" within the use of that term in making the warranty of seaworthiness applicable. See Rogers v. M/V Ralph Bollinger, E.D.La.1968, 279 F.Supp. 92, 94, 95, and cases there cited.

The district court found that the plaintiff was not contributorily negligent and that finding is not clearly erroneous.

The district court awarded damages in the total amount of $66,000.00 against which it credited $1,610.00 which had been paid plaintiff in compensation. The appellant insists that the court awarded excessive damages and allowed a double recovery. Plaintiff was 39 years of age at the time of the accident. His injuries were to his head, right ear, back and right leg. There was evidence that the injuries to plaintiff's ear and to his back were permanent. The district court found that plaintiff had lost wages and earnings capacity which will probably extend to the end of his life; that he had suffered physical pain and mental anguish and will probably continue so to suffer to the end of his life. Finally the district court found that:

"As a direct and proximate result of his injury plaintiff has suffered a

loss of physical capacity, other than his capacity to earn wages, which will in all reasonable medical probability continue to the end of his life.

"The present reasonable cash value of all compensable damages sustained by plaintiff as a direct and proximate cause of his injuries is $66,000.00 and plaintiff is entitled to recover judgment in that amount against defendant."

The appellant complains that the court entered judgment for a lump sum without allocating damages to the various elements which the court considered. We are cited to no law requiring such an allocation, and in our opinon that is a matter within the discretion of the district court. The appellant insists that the award of damages for "a loss of physical capacity other than his capacity to earn wages" allows a double recovery. On motion for new trial the district court found that no double recovery was awarded plaintiff, that the various elements of compensable damage are separate and distinct, that each element is supported by the evidence, and that the defendant's dissatisfaction with the form of the findings and conclusions did not require the court to assign specific dollar values to each element of damage. We cannot hold the award of damages clearly erroneous nor the denial of the motion for new trial an abuse of discretion. The judgement is

Affirmed.

## ON PETITION FOR REHEARING

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

### PER CURIAM:

This Court in its original opinion noted Diamond's complaint that the district court erred in entering judgment for a lump sum without allocating specific amounts to the various elements which the court considered. Specifically, Diamond objects to the court's finding that,

"As a direct and proximate result of his injury plaintiff has suffered a loss

of physical capacity, other than his capacity to earn wages, which will in all reasonable medical probability continue to the end of his life."

The award of damages for "a loss of physical capacity other than his capacity to earn wages," Diamond insists, allows a double recovery in that it overlaps with the award of damages for lost wages and earning capacity and/or past and future physical pain and mental anguish.

Diamond also objects to the district court's findings on damages in that: (1) In its findings that Neill would suffer future lost wages and earning capacity, the court did not consider actual earning capacity but calculated damages on Neill's inability to engage in oilfield work; (2) the court erred in not specifying the percentage of discount to reduce future earnings to present value.

These errors, Diamond contends, cannot be adequately reviewed by this Court until the district court specifies the exact amount for each element of damages and the factual basis for computing each amount.

On the basis of Rule 52(a), Fed.R.Civ. P., numerous courts have remanded with direction that the district court specify separately the amount of damages awarded for each of the several items held recoverable.[1] Although several of these decisions are distinguishable in that they were also remanded on the question of liability,[2] the remaining cases were remanded on the sole question of specificity of the damage award.

In contrast to the above cases, other cases have held that, under the circumstances, remand for further findings as to the damage award was not necessary.[3] The "special circumstances" which alleviated the necessity for remand were: (1) The findings of the district court were adequate for purposes of review;[4] (2) no objection or doubt was raised at the appellate level as to the excessiveness or composition of the lump sum award;[5] or (3) no exception was made at the trial as to the form of the district court's findings.[6]

■■ From the contrast between the above two groups of cases, it seems clear that appellate courts, in examining a "lump sum" damage award, should not adopt a *per se* rule that all cases must be remanded for compliance with Rule 52(a). While an award of damages with specification of the particular elements and the amounts for each and how they were computed is desirable for purposes of appellate review,[7] adequate review of an award can often be accomplished even though the award is in "lump sum" form. A remand for further findings under Rule 52(a) is necessary only when

1. Lettsome v. United States, 411 F.2d 917, 923 (5 Cir. 1969); Pierce v. New York Central R. R. Co., 409 F.2d 1392, 1399 (6 Cir. 1969); Penn Tanker Co. v. United States, 409 F.2d 514, 520–521 (5 Cir. 1969); Carpenters Local 1273 v. Hill, 398 F.2d 360, 363 (9 Cir. 1968); Traylor v. United States, 396 F.2d 837, 839 (6 Cir. 1968); Daido Line v. Gonzalez, 299 F.2d 669, 676–677 (9 Cir. 1962); United States v. Horsfall, 270 F.2d 107 (10 Cir. 1959); Alexander v. Nash-Kelvinator Corp., 261 F.2d 187, 190–191 (2 Cir. 1958); Major Appliance Co. v. Gibson Refrigerator Sales Corp., 254 F.2d 497, 502 (5 Cir. 1958).

2. Lettsome v. United States, *supra*; Penn Tanker Co. v. United States, *supra*; Major Appliance Co. v. Gibson Refrigerator Sales Corp., *supra*.

3. Pritchett v. United States, 425 F.2d 663 (5 Cir. 1970); Henderson v. United States, 328 F.2d 502, 505 (5 Cir. 1964); United States v. Jacobs, 308 F.2d 906 (5 Cir. 1962); George v. United States, 295 F.2d 310 (7 Cir. 1961); Dwyer v. Socony-Vacuum Oil Co., 276 F.2d 653, 654 (2 Cir. 1960); United States v. Pendergrast, 241 F.2d 687 (4 Cir. 1957); see Neal v. Saga Shipping Co., 407 F.2d 481, 489 (5 Cir. 1969) (dictum).

4. Henderson v. United States, *supra;* United States v. Jacobs, *supra*; George v. United Staes, *supra*; United States v. Pendergrast, *supra*.

5. Henderson v. United States, *supra*; Dwyer v. Socony-Vacuum Oil Co., *supra*.

6. United States v. Jacobs, *supra*; United States v. Pendergrast, *supra*.

7. Traylor v. United States, *supra*; Dwyer v. Socony-Vacuum Oil Co., *supra*.

an appellate court cannot adequately review the "lump sum" award in light of the objections raised as to the validity of the award.

Cases in which courts have remanded for further findings are illustrative of situations where further specificity may be required. Pierce v. New York Central R. R. Co., *supra* (whether loss of future earnings was reduced to present worth; needed breakdown on past and future increments of each element of damages); Carpenters Local 1273 v. Hill, *supra* (whether damages awarded were based on accrual or cash basis method of accounting); Daido Line v. Gonzalez, *supra* (whether impermissible damages were awarded); United States v. Horsfall, *supra* (whether two specific elements overlapped and thus resulted in double compensation); Alexander v. Nash-Kelvinator Corp., *supra* (whether injured party was over-compensated for lost wages).

 In the present case, upon reconsideration, we have decided to remand for additional findings in the light of certain objections raised by Diamond to the present findings of fact and conclusions of law. These objections are: (1) It appears that in awarding damages for lost wages and earning capacity, the court did not consider actual earning capacity but calculated damages on Neill's inability to engage in oilfield work (and thus that damages for this particular element are excessive); and (2) the award of damages for "loss of physical capacity other than his capacity to earn wages" overlaps with damages for lost wages and earning capacity and/or past and future physical pain and mental anguish. Further findings to enable this Court to review these objections would include: (1) factors considered in awarding damages for lost wages and earning capacity, (2) the amount of damages for lost wages and earning capacity, (3) factors considered and the nature of the injury for "loss of physical capacity other than capacity to earn wages," and (4) the amount of damages for this element.

The district court may, of course, make such further findings and conclusions as it may see fit, and may, in its discretion, take further evidence as to damages, or base its findings and conclusions upon the record already made.

Following the practice of the Second Circuit in Alexander v. Nash-Kelvinator Corp., *supra*, 261 F.2d at 191, we conclude:

"Although there is no error in the trial court's finding as to liability, the judgment appealed from is vacated and the case is remanded for findings as to damages and the entry or re-entry of such appropriate judgment as may be justified by the facts and the law."

Vacated and remanded.